BRIDGEHAM C. BURGEDORFF ET AL., APPELLANTS, V. MARTHA I. HAMER, APPELLEE.

FILED JANUARY 30, 1914. No. 17,512.

1. **Appeal**: AFFIRMANCE. Where fraud in obtaining the execution and delivery of a promissory note, and the mental condition of the maker to enter into the contract for which the note was given, are submitted to a jury under proper instructions, the verdict will not be set aside, unless it is unsupported by the evidence and is clearly wrong.

2. **Bills and Notes**: VALIDITY: MENTAL CAPACITY. If the maker was under guardianship and was mentally incompetent to transact business for herself when the note was executed, this will render such note void in the hands of the payee and others who subsequently hold it as collateral security.

3. **Evidence**: MENTAL CAPACITY: OPINIONS. Persons who have known the maker of the note for a number of years, who have had business transactions for her, and have observed her conduct and demeanor with a view to ascertaining her mental condition, may, after giv-

95 Neb. 8

ing the facts upon which their opinion is based, testify as to their opinion of her ability to transact business when the note was executed.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*S. A. Dravo, James I. Rhea* and *Thomas F. Hamer*, for appellants.

*F. L. Carrico, A. J. Shafer* and *L. C. Paulson, contra.*

BARNES, J.

This action was brought in the district court for Phelps county against the defendant, Martha I. Hamer, on a promissory note for $2,750, bearing interest at the rate of 8 per cent. per annum. The defendant, by her guardian, E. T. Grunden, and also in her own behalf, filed answers to the petition, in which she admitted signing the note in question, but alleged three matters of defense: First, that the note sued on was a part of, and attached to, a written instrument, which is set out in her answer, for the sale of a relinquishment of two certain homestead claims situated in the mountains of Colorado, and about four or five miles from Dawson Switch, and about 35 miles from the city of Denver. It was alleged in said answers that the note sued on was not to be paid until the fulfilment of the terms and conditions set out in the written contract of sale. Second, that the said note was obtained from the defendant by false and fraudulent representations made by the plaintiff Bridgeham C. Burgedorff and his son, George Burgedorff, to the defendant, relating to the value of the said claims, the amount and value of the timber, and the value of the improvements located on said claims; that the false and fraudulent representations were that the value of the timber growing upon said claims was $10,000, or thereabouts; that the value of the improvements was $1,000, and that the value of the land aside from the timber and improvements was about $1,400; that said representations were false, fraudulent, and untrue,

and defendant relied thereon to her great damage.   Third, the answers further alleged that the defendant at the time of the making of said contract and the signing of said note was mentally incompetent to transact her business, and that she was under guardianship, a guardian having theretofore been appointed for her by the county court of Phelps county, Nebraska.

Plaintiffs filed a reply to defendant's answers, in which they denied that they made any false or fraudulent representations to secure the note in question, denied that defendant is or was mentally incompetent, and alleged that the appointment of a guardian for her was secured under false representations on her part that she was an incompetent person, and also that her guardian was appointed for the purpose of prosecuting a certain suit for her in Harlan county, Nebraska.

Plaintiffs further alleged, by way of reply, that they had pledged the note in question with the Colorado State & Savings Bank to secure the payment of certain moneys loaned by said bank to plaintiffs, and that at numerous times the defendant, Martha I. Hamer, went with the plaintiff Bridgeham C. Burgedorff to the Colorado State & Savings Bank, and that she then and there stated to one McCutchen, the president of the said bank, that she had given the note in question to Burgedorff, and that the same would be duly paid at maturity; that she did not at said times in any manner question the validity of the note, or the insufficiency of the consideration therefor.

The Colorado State & Savings Bank intervened, by leave of the court, and alleged that the note in suit was pledged to it as security for loans made to the Burgedorffs; that said note was duly indorsed and transferred by them to the bank to secure loans made to them, and that might thereafter be made to them; that there is due to the Colorado State & Savings Bank from the said Burgedorffs the sum of $1,511.85, with interest thereon, and prayed that the said defendant be adjudged to pay the intervener the said sum, together with interest, to which answer and

cross-petition of the intervener the defendant filed a general denial.

Upon the issues thus made there was a trial to a jury, who returned a general verdict for the defendant, and against the plaintiffs and the intervener. Motions for a new trial were filed and overruled, judgment was rendered on the verdict, and the plaintiffs and intervener have appealed to this court.

Appellants earnestly contend that the evidence does not establish fraud in the transaction by which the note in question was obtained, because the representations made to defendant were of value only, and fraud cannot be predicated thereon. It appears that the plaintiff, his son, and his son's wife represented to defendant that the buildings on the two homestead claims were of the value of at least $1,000 that there were 30 acres of good farm land on the claims; that the timber growing thereon was of the value of $10,000, and that with very little work that amount could be realized therefrom. A fair preponderance of the evidence discloses that these representations were false, and amounted to a gross exaggeration of the real facts relating to the value of the claims. It also appears that plaintiff had no knowledge such as would enable her to form a correct estimate of the value of the claims. Ordinarily fraud could not be predicated on such representations, yet, when we take into consideration the defendant's mental condition, such representations would amount to fraud.

It appears that defendant, a few years before the transaction occurred, had been divorced from her husband, and had obtained a farm worth about $16,000 as alimony; that she had so mismanaged the farm, and the proceeds arising from mortgaging and selling it, as to require the appointment of a guardian of her person and estate, and at the time the note sued on was executed she was under such guardianship in Phelps county, Nebraska, where she resided when the appointment was made. It also appears that after obtaining her divorce she became infatuated with one Fred N. Skiles, who was a widower, and had given him

$8,000 to start a saloon; that proceedings to recover this money, or a part of it, had been prosecuted to a partly successful determination; that defendant had paid Skiles' attorney's fees; that she had gone to Thomasville, Colorado, thereafter; had purchased a hotel and saloon, and had again started Skiles in business, which business had been a failure; that she was induced to purchase the relinquishment of the claims in question because she was told that Skiles could make money out of the timber thereon. These facts were in evidence, and were well known to the plaintiffs at the time the note was executed. It further appears that plaintiff, after selling the relinquishments to defendant, induced his cousin to contest the entry to the one on which the most valuable timber was situated.

The question of the defendant's mental condition, and all of the circumstances of the transaction, were submitted to the jury under proper instructions, and we do not feel at liberty to disturb their verdict.

It is also contended that the court erred in receiving the evidence of Maxey, Gustus, and Everson as to the defendant's mental condition. It appears that Maxey was the agent who obtained the loan of $9,000 for the defendant on her Iowa farm, $8,000 of which she gave to Skiles; Gustus was the sheriff of Phelps county, who had served the papers in various suits for and against her, and had known her well for a number of years; and Everson was the attorney who had conducted the litigation for her in her attempt to recover her money from Skiles. These witnesses were able to testify as to her mental condition from facts related, derived from years of observation of the defendant, and the nature of her business transactions. We therefore conclude that their evidence was properly received.

It is further contended that the court erred in giving paragraph 5 of his instructions to the jury. By this instruction the court defined the degree or extent of defective mentality necessary to avoid a contract; and, as ap-

plied to the evidence in this case, this instruction appears to have been correctly given.

Finally, it is contended that the verdict should have been for the intervener, the Colorado State & Savings Bank, to the extent of the sum of money for which the plaintiff Burgedorff had pledged the defendant's note as collateral security. It appears that when the note was first pledged to the intervener it had no knowledge of the fact that defendant was under guardianship, but soon thereafter that fact was brought to its attention. By her conversations, however, with its president, Mr. McCutchen, it appears that he ought to have made investigation. She told him that Skiles wanted her to let him have $500 in money, that she did not want to do so, and she told him not to let Skiles have the money. Such a statement should have put the president of the bank on inquiry as to the mental condition of the defendant. Again, it appears that the intervener tried to get Mrs. Hamer's money after its officers knew she was under guardianship. But, above all, the jury must have found that she was mentally incompetent to transact business when she gave the note, and it would follow that the note was void both as to the bank and as to the plaintiff Burgedorff.

Again, it is suggested that the appeal in this case is a joint one; the intervener having jointly availed itself of the appellate proceedings instituted by the plaintiffs. In *Moseman v. State,* 59 Neb. 629, it was held: "A joint assignment of error in a petition in error made by two or more persons, which is not well taken as to all who joined therein, will be overruled as to all." In *American Bank v. Hand,* 59 Neb. 273, it was said: "Joint assignments of error in a petition not good as to all who joined must be overruled"—citing *Levy v. South Omaha Savings Bank,* 57 Neb. 312. It would seem that where two persons join in an appeal, and the judgment appealed from is good as to one of the parties, it should be held good as to both of the joint appellants.

It appears that the verdict of the jury in this case has resulted in substantial justice, and the judgment of the district court is

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.